# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRAD LEE SHARP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-462-JHP-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Brad Lee Sharp requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born on October 11, 1981, and was twenty-seven years old at the time of the most recent administrative hearing (Tr. 60, 251). He has an eighth grade education, and has worked as a forklift operator, landscape worker, and dairy worker (Tr. 27, 316). The claimant alleges he has been unable to work since August 1, 2007, due to hepatitis C, torn cartilage in his right leg, depression, and anxiety (Tr. 310, 388).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-05, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on January 8, 2008. His applications were denied. ALJ Lesly W. Mattingly conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated August 6, 2009 (Tr. 93-99). The claimant subsequently applied for disability insurance benefits on October 4, 2009, and for supplemental security income benefits on September 29, 2009, which were approved with an onset date of August 7, 2009. The Appeals Council then vacated both prior decisions, consolidated the claims, and remanded them for further proceedings with instructions to: (i) consider the state agency source opinions in accordance with Soc. Sec. Rul. 96-6p, (ii) properly evaluate the claimant's subjective complaints and provide an appropriate rationale, (iii) further consider the claimant's maximum RFC and provide appropriate rationale with specific references to evidence, (iv) obtain psychological or psychiatric medical expert evidence to clarify the nature and severity of the claimant's impairments if warranted, (v) obtain evidence from a

vocational expert if necessary, (vi) conduct further proceedings required to determine whether substance abuse was a contributing factor material to any finding of disability (Tr. 105-107). ALJ David Gutierrez then conducted a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated August 22, 2012 (Tr. 11-29). The Appeals Council then denied review, so ALJ Gutierrez's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.1481, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined by 20 C.F.R. §§ 404.1567(a), 416.967(a), *i. e.*, he could lift/carry ten pounds frequently and occasionally, stand/walk two hours total in an eight-hour workday, sit for six hours in an eight-hour workday, cannot operate foot controls, can occasionally push/pull, climb ramps, balance, stoop, kneel, crouch and crawl (Tr. 16). Additionally, the ALJ found that he could never climb ladders, must avoid moving machinery, unprotected heights, and exposure to heat, cold, wetness, humidity, and noise. Furthermore, he could perform jobs which do not require frequent verbal communication, could perform simple, routine, repetitive tasks (could be done frequently but free of any fast-paced production requirements) involving only simple work-related decisions with few, if any workplace changes, with no tandem or team work, and only occasional interaction with coworkers and no contact with the public, and he would be able to respond to the usual work situations and changes in the routine work

4

setting, maintain concentration and attention for two-hour segments over an eight-hour period, and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and national economies that he could perform, *i. e.*, lens inserter, cutter and paster, and hand mounter (Tr. 28).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly assess the state reviewing physician opinions under Soc. Sec. R. 96-6p and 20 C.F.R. § 416.927(f) and failing to provide reasoning for rejecting those opinions, (ii) because his mental RFC findings were not support by substantial evidence, and (iii) because the ALJ's decision was not supported by substantial evidence as a whole. The undersigned Magistrate Judge agrees with the claimant's first contention, and therefore finds that the Commissioner's decision should be reversed and remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of hepatitis C, history of right knee arthroscopy, bipolar versus major depression, anxiety, personality disorder, polysubstance abuse in full sustained remission by self-report (Tr. 14). The claimant's mental health treatment began when he was 15, with a school counselor who worked with him on coping and dealing with his past history of abuse as a child (Tr. 611-617). On August 24, 2009, the claimant began receiving mental health outpatient treatment at Community Healthcore, and was diagnosed with major depressive disorder, recurring, moderate, and generalized anxiety disorder, and assessed a global assessment of

functioning score of 41 (Tr. 681). The medical evidence related to the claimant's mental impairments (the subject of appeal) reveals that the claimant reported for a consultative psychological evaluation on December 28, 2009 with Dr. Betty J. Feir, Ph.D. Dr. Feir's diagnosis was Axis I: personality disorder NOS and bipolar disorder NOS, and Axis IV: unemployment and problems across environments, as well as a GAF of 50 (Tr. 657). She stated that the claimant's condition could improve with counseling, medical attention, and medication (Tr. 657). She noted that the claimant's "concentration and persistence were fine," but that he had a delayed pace when asked questions during the intellectual functioning portion, particularly on the abstract thinking, naming the cities, and the similarities and differences section (Tr. 658).

The claimant established care at Vista Health Outpatient Services on September 27, 2010, with a history of bipolar disorder and currently being off his medications. He was assessed a GAF of 60 (Tr. 719). The claimant began treatment at Carl Albert Community Mental Health Center on January 25, 2012, for anxiety/paranoia and depression/anger, and records go through May 11, 2012, when he missed an appointment (Tr. 725-758).

On January 21, 2010, state reviewing physician Dr. W. Miller Logan completed a psychiatric review technique form, indicating that the claimant had moderate limitations in restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, and pace (Tr. 695). Dr. Logan noted that the claimants ADLs demonstrated "significant loss of motivation"; that he was dependent on his wife for meals, housekeeping, shopping, and money management; and

that he tended to have anxiety attacks in stressful situations and had difficulty getting along with others (Tr. 697). He then completed the Mental RFC assessment, indicating that the claimant was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in the work setting (Tr. 699-700). Dr. Logan further indicated that the claimant had moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and the ability to travel in unfamiliar places or use public transportation (Tr. 699-700). He then stated that the claimant was unable to maintain attention and concentration for extended periods, unable to accept instructions and respond appropriately to criticism from supervisors, and unable to respond appropriately to changes in the work setting (Tr. 701). The following month, Dr. Marvin Blase completed a review of Dr. Logan's PRT and Mental RFC assessments. In a section for narrative discussion, Dr. Blase stated that the claimant: (i) retained the ability to understand and recall simple instructions and work locations, but may have significant problems understanding and recalling more detailed and complex

instructions; (ii) retained the ability to perform simple tasks, cannot consistently sustain adequate concentration, persistence, and pace, or maintain a schedule or attendance during the usual workweek, would function best in a low stress and low demand work environment, require close supervision, and that psych based symptoms were likely to intrude; (iii) would function best in a position that did not require that he relate to the public, would perform best with supportive and non-confrontational supervision, would likely distract others based on the present of psych based behaviors or symptoms, and would work best in a position that did not require ongoing interaction with coworkers; (iv) could not adjust to workplace changes or develop independent workplace goals (Tr. 707).

Dr. Gregory Atchison completed a psychiatric evaluation of the claimant on November 4, 2010. Upon exam, Dr. Atchison found that the claimant was unkempt, mood and affect were very labile, that he was not anxious through the interview and had fairly good focus but was easily distracted. Dr. Atchison stated that the claimant's mood was depressed, he was grandiose at times, had average intelligence, complained of (and demonstrated during testing) poor short term memory, had partial insight and questionable judgment (Tr. 716). He was assessed with bipolar disorder, type I, mixed; polysubstance abuse dependence, dependent narcissistic mixed personality features to a disorder, mild to moderate organic brain syndrome from chronic iv narcotic abuse, victim of sexual abuse as a child, and history of hepatitis C, as well as a GAF of 45 (Tr. 717).

On remand, ALJ Gutierrez submitted a "Medical Interrogatory Physical & Mental Impairment(s) – Adults" to Dr. Barbara Felkins. Dr. Felkins completed the form on

December 26, 2011, indicating that the evidence of record established the following impairments: bipolar vs. major depression, personality disorder, mixed substance abuse, hepatitis C with low lab indices and no severe liver damage yet, and a history of arthroscopy on the right knee (Tr. 708). She stated that the claimant met listing 12.09, which she stated was substance abuse affective disorder, but that absent drug abuse the claimant would not meet or equal a listing (Tr. 709). As part of her rationale, she stated, that the claimant's credibility was highly suspect in light of his past drug use, that there were no longitudinal treatment records for the claimant's psychiatric problems, and that "one could also project" that the claimant could respond within 12 months if he were sober and receiving regular treatment for his underlying psychiatric issues (Tr. 709). She then opined that the claimant could perform light work, that there was no evidence the claimant's knee arthroscopy from 2008 was not effective, and that he could perform simple work, be able to tolerate work stress and concentrate and make judgments about simple work (Tr. 710).

The dispositive issue in this case is whether the ALJ properly analyzed the claimant's severe mental impairments. Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id*. *See also Valdez v. Barnhart*, 62 Fed.

Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii).

In this case, the ALJ provided a thorough summary of the medical evidence. He assigned "great weight" to portions of Dr. Felkins's opinion and little weight to other portions. He assigned great weight to her opinion with regard to the claimant's mental limitations, but little weight to her opinion that the claimant met Listing 12.09 or that he could perform light work (Tr. 23). He stated that there were no cognitive findings or records substantiating her opinion that the claimant would be unable to complete a normal work day or work week secondary to substance abuse (Tr. 23). He then noted that she was a board-certified psychiatrist and that her opinion as to the claimant's mental limitations was "well-supported by the evidence as a whole, including the findings on mental status examination and reports of the treating and examining mental health providers" (Tr. 24). He also assigned the opinions of Dr. Logan and Dr. Blase little weight as "both unsupported by, and inconsistent with, the evidence available as a whole" (Tr. 24). But here, the ALJ's characterization of Dr. Felkins's opinion is not supported by the record. Without referring to any medical evidence, she stated that the claimant would be able to tolerate work stress, concentrate, and make judgments about simple work, and the ALJ adopted these findings. She complained, however, about a lack of longitudinal treatment records for her review (Tr. 710). Treatment records not available to Dr. Felkins but from that time frame indicate that the claimant was easily distracted, had poor short term memory, only partial insight, and questionable judgment

(Tr. 716). The ALJ acknowledges this, but does not explain why he rejected that assessment in favor of Dr. Felkins, essentially engaging in improper picking and choosing in order to arrive at his pre-determined conclusion. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination."). Furthermore, the ALJ rejected the opinions of Dr. Logan and Dr. Blase as "inconsistent" with the evidence of record because there was no evidence the claimant could not respond to changes or was unable to accept instructions, but he did not explain why he rejected their *other* findings as to concentration, persistence, and pace, and the claimant's judgment. Thus, the ALJ's purported basis for finding the opinions of Dr. Logan and Dr. Blase unpersuasive is not sufficiently clear for the undersigned Magistrate Judge to review. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Also pertaining to the proper assessment of the claimant's mental impairments, the undersigned Magistrate notes that the ALJ expounded on the use of GAF scores and concluded that, standing alone, they are not dispositive as to disability and that isolated GAF scores were not employed as the basis for the decision (Tr. 23). He did not, however, *analyze* the claimant's GAF scores that ranged from 41 to 60. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Instead of simply rejecting the claimant's sub-50 GAF scores as "not dispositive," the ALJ should have determined whether such low GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."). *See also Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence.").

Accordingly, the decision of the Commissioner should be reversed and the case remanded for a proper analysis of the medical opinions. On remand, the ALJ should

12

reconsider those opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**